IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:06CV939 |
| REICHHOLD, INC., | ) ) ) | |
| Defendant, | ) | |

| | | |
|---|---|---|
| REICHHOLD, INC., | ) ) | |
| Counter-Claimant, | ) ) | |
| v. | ) ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; GERLING AMERICA INSURANCE COMPANY; INDEMNITY INSURANCE COMPANY OF NORTH AMERICA; AND WESTCHESTER FIRE INSURANCE COMPANY, | ) ) ) ) ) ) ) ) | |
| Counter-Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on various Motions for Summary Judgment in this Declaratory Judgment action related to the obligations of the insurers, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Gerling America Insurance Company ("Gerling"); Indemnity Insurance Company of North America ("Indemnity") and Westchester Fire Insurance Company ("Westchester") (collectively, "the Insurers"), in connection with underlying claims against the insured, Reichhold, Inc. ("Reichhold"), for

damages resulting from certain resin produced by Reichhold and sold to Nebula Glass International, Inc. d/b/a Glasslam ("Glasslam") from 1996 to 2001 for use in making impact-resistant laminated glass used in windows and doors. In 2002, Glasslam brought suit against Reichhold for breach of contract and breach of warranty, alleging that the resin provided by Reichhold was defective because it was "undercooked" and because it failed to use the required UV blocker, Tinuvin, at a concentration of .2 percent as required by their agreement, which caused the resin to yellow and degrade when exposed to the sun. A jury found in Glasslam's favor on the breach of contract and breach of warranty claims ("Glasslam I"). Subsequent suits followed, including a second suit by Glasslam ("Glasslam II"), which was ultimately settled, two suits involving Glasslam's customer, Jeld-Wen ("Jeld-Wen I" and "Jeld-Wen II"), which were also settled, and other smaller third party claims, some of which have been settled.

From 1998 through 2004, Reichhold was insured on annual Commercial General Liability insurance policies issued by Zurich Insurance Company/Zurich America Insurance Company ("Zurich"). For years 1996 and 1997, Reichhold was insured on annual Commercial General Liability insurance policies issued by National Union. In addition, from 1996 through 2002, Reichhold was insured on annual Commercial Umbrella policies issued by National Union with policy limits of $35 million per occurrence and aggregate for 1996, 1997, and 1998, and with limits of $50 million per occurrence and aggregate for 1999, 2000, 2001, and 2002. Reichhold was also insured for amounts above the Umbrella Policies through annual Excess Liability Policies issued by Gerling for years 1996-1998, issued by Indemnity for 2000, and issued by Westchester for 2001.

As a result of the judgments and settlements against Reichhold, Zurich paid its policy limits and is not included in the present suit. National Union paid a portion of the Glasslam I judgment without a reservation of rights. National Union also paid various amounts toward the settlements in Glasslam II and Jeld-Wen I and II, but attempted to reserve its rights to seek reimbursement from Reichhold as to those amounts if coverage was not found to exist. National Union filed the present action seeking a declaratory judgment that the claims against Reichhold are not covered by the National Union policies. Reichhold brought counter-claims, seeking a determination that coverage did exist as to National Union and as to the Excess Policies (Gerling, Indemnity, and Westchester). Reichhold also asserted claims against National Union for Bad Faith, although those claims were stayed by agreement of the parties until the coverage disputes were resolved.

After extensive discovery, the parties filed the present Motions for Summary Judgment. The Motions are divided into two Phases. In Phase I, the parties raise various issues related to whether coverage exists at all. As to these motions, the policies provide coverage for Reichhold's liability imposed because of "property damage" that is "caused by an Occurrence," and the primary dispute revolves around whether the resins caused "property damage" under the terms of the policies and whether there was an "occurrence" under the terms of the policies. The parties subsequently filed separate Motions for Summary Judgment as to Phase II, which involves disputes regarding the scope of coverage and the allocation of liability between the various policies, if coverage is determined to exist in Phase I.

On June 2, 2009, the Magistrate Judge issued a Recommended Decision, recommending

that the Insurers' Motions for Summary Judgment on Phase I be granted. Specifically, the Recommendation concluded that the damage caused by the defective resin was not an "occurrence" under the terms of the policy. The policies define an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured." Under North Carolina law, an "accident" is "an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co., 472 F.3d 99, 120 (4th Cir. 2006). An act of negligence can constitute an "accident" under a liability policy "when the resulting damage takes place without the insured's actual foresight or expectation." Id. at 120-21. In addition, "even injuries caused by intentional acts can be accidental if [the] injury was unintentional or not substantially certain to result from [the] intentional act." ABT, 472 F.3d at 121; see also Waste Management of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374 (1986) (holding that intentional acts can result in an "occurrence" that is unexpected and unintended); North Carolina Farm Bureau Mut. Ins. Co. v. Stox, 330 N.C. 697, 709, 412 S.E.2d 318, 325 (1992) (holding that the term 'accident' "*does* include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act."). Thus, under North Carolina law, the Court must look to "'whether the damage was expected or intended' in determining whether an event constitutes an 'occurrence.'" ABT, 472 F.3d at 121 (quoting Waste Management of Carolinas, Inc. v. Peerless Ins. Co., 315

4

N.C. 688, 340 S.E.2d 374, 380 (1986)).

In applying this test in the present case, the Recommendation principally concluded that because Reichhold was found guilty of breach of contract and breach of warranty in Glasslam I for delivering resins that did not conform to specifications, "the court should find that Reichhold should have reasonably anticipated significant problems with the Safety Plus 1 glass and infer intent." In reaching this conclusion, the Recommendation concluded that the breaches were not acts of negligence, but were an "intentional deviation from known contract specifications." However, this Court finds that this conclusion overstates the actual holding of the jury in Glasslam I. The jury in Glasslam I did not determine whether the breach was intentional, or the specific nature of the breach, and found only that Reichhold had breached an oral contract with Glasslam and breached express warranties and implied warranties of merchantability in the sale of the resin. There was no finding of fraud or misrepresentation, nor any special findings regarding the nature of the breach.

More importantly, this Court concludes that even if there was an intentional deviation from the contract terms, that does not establish as a matter of law that Reichhold intended the resulting damage to the doors and windows. As discussed above, "even injuries caused by intentional acts can be accidental if [the] injury was unintentional or not substantially certain to result from [the] intentional act," and the Fourth Circuit has emphasized that "the issue is not whether an insured *should have* foreseen the consequences of its conduct." ABT, 472 F.3d at 121; see also Travelers Indemnity Co. v. Miller Bldg. Corp., 97 Fed. Appx. 431, 436 (4th Cir. 2004) (noting that "recent cases from North Carolina confirm that foreseeability in the tort sense does

5

not preclude coverage under a liability insurance policy."); McCoy v. Coker, 174 N.C. App. 311, 316, 620 S.E.2d 691, 695 (2005) ("[T]he test [is] . . . not an objective one asking whether the insured 'should have' expected the resulting damage." (internal quotations omitted)). In the present case, having considered the information presented, this Court concludes that even if Reichhold "should have" expected the resulting damage, Reichhold's acts were not so substantially certain to cause injury and damage as to infer an intent to injure as a matter of law. Instead, it is a factual question, to be resolved by a jury, whether Reichhold expected or intended to damage the doors and windows into which the resins were integrated, or whether such damage was substantially certain to occur. Therefore, the Court will not adopt the Recommendation with respect to whether the formulation and sale of the defective resins was an "accident" under the terms of the policy.[1]

Although the Court declines to adopt the Recommendation with respect to whether the damages were expected or intended, the Court nevertheless adopts that portion of the Recommendation rejecting Reichhold's contention that National Union waived its right to contest coverage as a matter of law by payment of the Glasslam I judgment. In this regard, the Court notes that National Union paid a significant portion of the Glasslam I judgment without

---

[1] The Court notes that the same analysis applies with respect to the Insurer's contentions regarding the "Intentional Acts" exclusion [Exclusion O], which excludes coverage for property damage "expected or intended from the standpoint of the Insured," although the Insurers bear the burden of proof with respect to the applicability of the exclusion. As noted above, the Court cannot conclude as a matter of law that Reichhold expected or intended the damage to the windows and doors, and therefore the Insurers are not entitled to summary judgment based on this exclusion. See Stox, 330 N.C. at 703-04, 412 S.E.2d at 322 (noting that "it is the resulting injury, not merely the volitional act, which must be intended for this exclusion to apply").

6

a reservation of rights, and National Union does not seek to contest or recover any portion of that payment. However, at the time of the payment, National Union did reserve its right to contest coverage with respect to any future claims. For the reasons set out in the Recommendation, to the extent that Reichhold seeks summary judgment in its favor on this issue, the Court finds that National Union has not waived its right to contest coverage as a matter of law based on its payment of the Glasslam I judgment. In addition, the Court also adopts that portion of the Recommendation concluding that National Union is not estopped from denying coverage based on the fact that National Union may have raised similar contentions and failed to prevail on those contentions in other, factually distinct cases. The Court finds that the results and holdings in these other, unrelated cases would not result in any collateral estoppel in the present case.

Having so concluded, the Court must still consider the remaining issues raised by the parties in their various Motions for Summary Judgment that were not addressed as part of the Recommendation. Considering first the remaining issues raised with respect to the Phase I Motions for Summary Judgment, related to whether insurance coverage exists, the primary remaining contention raised by the Insurers is that the damage to the doors and windows was not "property damage" under the terms of the policies.

"Property damage" under the policies means "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured." Pursuant to this provision, "property damage" involves actual "physical injury" to tangible property, or involves "loss of use" of property that is not physically

7

injured. However, the policies exclude coverage for "Property Damage to Your Product arising out of it or any part of it." Thus, coverage exists only for "property damage" to the property of a third party, not for damage to or defects in an insured's own product. See ABT, 472 F.3d at 118 ("Under North Carolina law, this language 'excludes damages sought for the cost of repairing or replacing the insured's own work or product.'" (quoting Western World Ins. Co. v. Carrington, 90 N.C. App. 520, 369 S.E.2d 128, 130 (1988)); Production Sys. Inc. v. Amerisure Ins. Co., 167 N.C. App. 601, 606, 605 S.E.2d 663, 666 (2004) ("The term 'property damage' in an insurance policy has been interpreted to mean damage to property that was previously undamaged, and not the expense of repairing property or completing a project that was not done correctly or according to contract in the first instance."). In this regard, North Carolina courts have recognized that liability policies are not "performance bonds" and do not include repair of an insured's own faulty product or work as "property damage." See Barbee v. Harford Mutual Ins. Co., 330 N.C. 100, 103, 408 S.E.2d 840, 842 (1991) ("Since the quality of the insured's work is a 'business risk' which is solely within his own control, liability insurance generally does not provide coverage for claims arising out of the failure of the insured's product or work to meet the quality or specifications for which the insured may be liable as a matter of contract. . . . [L]iability insurance policies are not intended to be performance bonds." (quoting Western World Ins. Co. v. Carrington, 90 N.C. App. 520, 523, 369 S.E.2d 128, 130 (1988)). Thus, because a liability policy is not in the nature of a "performance bond," damages arising solely for breach of contract based on non-compliance with contract terms, without any actual physical injury to a third party's property or loss of use of that property, would not be covered

"property damage." See Hobson Constr. Co. v. Great Am. Ins. Co., 71 N.C. App. 586, 322 S.E.2d 632 (1984) (holding that where underlying claims were for repair and completion of insured's own work, with no allegation of physical injury or destruction of tangible property, such claims were not for "property damage"). However, where an insured's product causes physical injury to the property of a third party, coverage would exist, regardless of whether the insured's liability to the third party was based in tort law or contract law. See, e.g., Breezewood v. Amerisure Mutual Ins. Co., 2009 WL 1877465 (4th Cir. July 1, 2009) (holding that costs associated with bringing an insured's own product or work into compliance with contractual expectations is not covered by a commercial general liability policy, but that "[g]eneral liability insurance policies are intended to provide coverage where the insured's product or work causes personal injury or damage to the person or property of another" (quoting Limbach Co., LLC v. Zurich American Ins. Co., 396 F.3d 358, 365 (4th Cir. 2005)); Travelers Indemnity Co. v. Miller Building Corp., 97 Fed. Appx. 431 (4th Cir. 2004) (recognizing that even where underlying claims for breach of contract for "faulty workmanship" would not be covered to the extent the claims are based on correcting the insured's own work or product, the underlying claims would nevertheless be within the scope of policy coverage to the extent the claims are for damage to third party property); see also Wausau Underwriters Ins. Co. v. United Plastics Group, Inc., 512 F.3d 953 (7th Cir. 2008) (noting that a comprehensive general liability policy would include coverage for property damage to property other than the defective product, including liability for consequential damages imposed "because of property damage" regardless of what cause of action was pleaded in the underlying suit).

9

Thus, in the present case, Glasslam (the third party) could have recovered against Reichhold for damages resulting from Reichhold's failure to meet contract specifications, even if no actual physical injury to tangible property was established. However, Reichhold's liability to Glasslam would only be within the scope of the relevant insurance policies to the extent that Reichhold establishes that the liability was because of "property damage" involving actual physical injury to or loss of use of third party property. In addition, Reichhold may not recover for defects in, damage to or replacement costs for Reichhold's own product, the resin. However, the windows and doors were not Reichhold's product or work, and there is no dispute that at least some of the windows and doors that incorporated Reichhold's defective resin suffered actual "physical injury" because the windows began to exhibit delamination and/or discoloration. In addition, there are remaining questions regarding the extent to which the other windows and doors involved in the underlying claims suffered "physical injury." In these circumstances, the Court concludes that the determination of the extent to which the underlying claims against Reichhold involved physical injury to tangible third party property, and the damages attributable to such injury, are best resolved by the jury rather than by the Court on summary judgment.[2]

---

[2] The Court notes that the insurers also seek summary judgment regarding the extent of damages recoverable under the policies for "property damage," and specifically whether claims against Reichhold for "lost profits" and "claims administration" for replacement of defective glass would be covered under the various policies. However, as noted above, the Court concludes that it will be for the jury to determine the extent of any "property damage" under the terms of the policies and the damages properly attributable to such claims, including any liability of Reichhold "because of" such property damage, and such a determination will not be made by the Court prior to trial.

The Court notes that for its part, Reichhold contends that all of the amounts paid in the underlying judgments and settlements should be included as liability for "property damage," since the Insurers may not "relitigate" underlying liability questions. See Iowa Mutual Ins. Co. v. Fred M. Simmons, Inc., 262 N.C. 691, 695, 138 S.E.2d 512, 514 (1964) ("When insured's legal liability for damages resulting from his negligence and the amount thereof has been judicially determined in a suit defended by insurer under the terms of its policy, insurer cannot, when called upon to discharge insured's liability, relitigate the questions answered in the suit against insured."). However, with respect to the underlying claims in the present case, Reichhold was determined in Glasslam I to be in breach of contract and was held liable for damages for providing resin that did not conform to the contract terms, including consequential damages for that breach. The liability determinations in Glasslam I did not necessarily require a determination that the resin had actually caused any physical injury to tangible property, nor did it resolve the extent to which Reichhold's liability was "because of" such physical injury. Thus, the underlying claims against Reichhold, and the settlement of those claims in Glasslam II and Jeld-Wen I and II, could have involved damages for "property damage," but also could have involved additional damages and remedies based solely on Reichhold's breach of its contract with Glasslam. Therefore, while neither party may "relitigate" issues that have been determined in the underlying cases, the Court concludes that the underlying cases did not resolve whether the damages were for "property damage," and it will be for the jury in the present case to determine what proportion of Reichhold's liability in the underlying claims was because of "property damage" under the terms of the policies. Cf. ABT, 472 F.3d at 118 (recognizing

11

allocation by jury, in trial on coverage issues, of percentage of underlying settlement attributable to replacement of insured's own product and percentage attributable to third-party property damages); Wausau Underwriters Ins. Co. v. United Plastics Group, Inc., 512 F.3d 953 (7th Cir. 2008) (noting that where the underlying suits did not determine the proportion of damages attributable to covered "property damage," a trial was necessary on this issue).

Reichhold also contends that under the policies, "property damage" includes "[l]oss of use of tangible property that is not physically injured." Based on this provision, Reichhold contends that it is entitled to coverage for all of the widows and doors because of the "loss of use" of the windows and doors, even if there was no actual physical injury to those windows and doors. However, as to this issue, the Insurers raise the "Impaired Property" exclusion, which excludes liability for "'property damage' to Impaired Property <u>or</u> property that has not been physically injured, arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or (2) a delay or failure by the insured or anyone acting on the insured's behalf to perform a contract or agreement in accordance with its terms." Based on this exclusion, the Insurers contend that where any alleged "loss of use" arose from a defect in Reichhold's resin, damages would be excluded by the Impaired Property Exclusion. In Response, Reichhold contends that the windows and doors were not "Impaired Property," but were, in fact, "physically injured."[3] It therefore appears that Reichhold would concede that in

---

[3] Under the policies, "Impaired Property" means tangible property other than Reichhold's product "that cannot be used or is less useful because: (1) It incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate or dangerous; or (2) You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by: (1) The repair, replacement, adjustment or removal of Your Product

12

this case, this Exclusion would exempt from coverage any claims related to windows and doors that were not "physically injured." See America Online, Inc. v. St. Paul Mercury Ins. Co., 347 F.3d 89, 98 (4th Cir. 2003) ("The straightforward meaning of this exclusion bars coverage for loss of use of tangible property of others that is not physically damaged by the insured's defective product."). However, it will be for the jury to determine the extent to which the claims against Reichhold were based on physical injury to third party property, and any other issues related to application of this Exclusion are better resolved at trial.

The Insurers also rely on the "Recalled Product" exclusion, which excludes coverage for costs incurred for loss of use, repair or replacement of Impaired Property if the product is withdrawn or recalled from the market because of a known or suspected "defect, deficiency, inadequacy or dangerous condition in it." The Insurers contend that this provision precludes coverage for replacement of windows that were suspected of containing similar defects that have not yet manifested. In its Response, Reichhold contends that this exclusion does not apply because the resin was not recalled and because this exclusion does not apply to the extent the defective resins actually caused damage to third party property. However, as noted above, the extent of any actual damage to third party property will be for the jury and will not be determined by the Court on summary judgment.

The Court has thus considered all of the issues raised by the parties with respect to whether the claims against Reichhold were based on "property damage," and the Court concludes that Reichhold has presented evidence that would support a finding that at least some

---

or Your Work; or (2) Your fulfilling the terms of the contract or agreement."

13

of Reichhold's underlying liability was based on "property damage" consisting of physical injury to tangible third party property. However, the extent of physical injury to the third party property was not resolved in the underlying settlement and judgments since those cases involved potential damages for failure to meet contract specifications, which did not necessarily require a finding of actual physical injury to the windows and doors. Therefore, as noted above, it will be for the jury to determine at trial the extent to which Reichhold's underlying liability was based on physical injury to tangible property, beyond any damage to or replacement costs of the resin itself, in order to bring the claims within the policy coverage for "property damage."

In the Phase I Motions for Summary Judgment, the parties have raised various other issues. In addition to the contentions addressed above, National Union contends that none of the "property damage" occurred during the periods when National Union provided coverage. However, the Court concludes that a determination of when the damage occurred and how the claims should be allocated between the Insurers would be appropriate for trial, given the issues to be resolved by the jury, rather than as a summary determination by the Court prior to trial. National Union also contends that their Primary Policies (but not their Umbrella Policies) exclude coverage for "property damage for which the insured in obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, this exclusion was not contained in the Umbrella Policies, nor was it pled by National Union as an affirmative defense. More importantly, it does not appear that this exclusion would apply in any event, since there is no evidence that Reichhold expressly assumed the liability of a third party in an indemnity or "hold harmless" agreement. Therefore, the Court finds that National Union is not

entitled to summary judgment on this basis.

In addition, Defendant Gerling contends that Reichhold breached its policy obligations by failing to provide sufficient notice to Gerling regarding the Glasslam I and Glasslam II suits. As to this issue, it is undisputed that Reichhold sent to Gerling copies of the complaints in Glasslam I and Glasslam II shortly after each suit was filed. Gerling nevertheless contends that Reichhold did not sufficiently inform Gerling of the status of the underlying litigation. In these circumstances, the Court concludes that it is a question for the jury whether Reichhold provided sufficient notice as soon as practicable, and if not, whether Reichhold acted in good faith and whether Gerling can establish that any failure or delay was prejudicial to it. See Henderson v. Rochester Am. Ins. Co., 254 N.C. 329, 118 S.E.2d 885 (1961); Great Am. Ins. Co. v. C. G. Tate Constr. Co., 315 N.C. 714, 340 S.E.2d 743 (1986). Therefore, Gerling's Motion for Summary Judgment on this issue will be denied.

Defendants Westchester and Indemnity, with Excess Policies for 2000 and 2001, contend that claims related to certain of Reichhold's resins (specifically "Resin 38" and "Resin 29") are not covered by their policies because Reichhold was aware of potential claims regarding these resins prior to the issuance of the Westchester and Indemnity policies, and these claims are therefore barred by the "known loss doctrine." However, the Court cannot conclude as a matter of law that at the time of the issuance of the Westchester and Indemnity policies, Reichhold knew that it was legally liable for third party property damage or knew that such liability was substantially certain to occur. See Stonehenge Eng'g Corp. v. Employers Ins. of Wausau, 201 F.3d 296, 302 (4th Cir. 2000). At the time the policies were issued, Glasslam I had not yet been

15

filed, and there is evidence that the Reichhold resins were not identified as the source of the delamination problems until September 2001. Therefore, Westchester and Indemnity are not entitled to summary judgment with respect to the known loss doctrine.

Defendants Westchester and Indemnity also contend that Reichhold breached its obligations under the policies by failing to provide sufficient notice to Westchester and Indemnity regarding the <u>Glasslam I</u> and <u>Glasslam II</u> suits. As to this issue, it is undisputed that Reichhold sent to Westchester and Indemnity copies of the complaints in <u>Glasslam I</u> and <u>Glasslam II</u> shortly after each suit was filed. Westchester and Indemnity nevertheless contend that Reichhold did not sufficiently inform them of the status of the underlying litigation or respond to their request for additional information with regard to <u>Glasslam I</u>. However, as with Defendant Gerling's similar contentions, the Court concludes that it is a question for the jury whether Reichhold provided sufficient notice as soon as practicable, and if not, whether Reichhold acted in good faith and whether Westchester and Indemnity can establish that any failure or delay was prejudicial to them. See <u>Henderson</u>, 254 N.C. 329, 118 S.E.2d 885; <u>Great Am. Ins.</u>, 315 N.C. 714, 340 S.E.2d 743. Therefore, Westchester and Indemnity's Motion for Summary Judgment on this issue will be denied.

Finally, the Court notes that Reichhold has also moved for Summary Judgment in its favor as to Phase I. However, as discussed at length above, the Court has concluded that there are issues for trial with respect to whether the claims against Reichhold were for "property damage" caused by an "occurrence." In addition, as discussed above, the Court has adopted the Recommendation to the extent that the Recommendation rejected Reichhold's arguments

16

regarding waiver and collateral estoppel. Therefore, Reichhold's Motion for Summary Judgment will be denied.

Having determined that summary judgment is not appropriate and that a trial is necessary with respect to Phase I, the Court has also considered the issues raised by the parties in their Motions for Summary Judgment with respect to Phase II. As to Phase II, all of the parties raise various cross motions for summary judgment with respect to the appropriate "trigger" for coverage and whether there were multiple "occurrences" under the policies, in order to determine how any potential liability should be allocated among the various policies. Under North Carolina law, "where the date of the injury-in-fact can be known with certainty, the insurance policy or policies on the risk on that date are triggered." Gaston County Dyeing Machine Co. v. Northfield Ins. Co., 351 N.C. 293, 303, 524 S.E.2d 558, 564 (2000). However, as noted above, it will be for the jury to determine the extent of any covered "property damage," and the Court concludes that resolution of the issues of when any injury occurred and how any damages should be allocated are best reserved for trial. In addition, the Court notes that, having reviewed the Phase II Motions for Summary Judgment, there is no basis to conclude that any of the Insurers are entitled to judgment as a matter of law as to all potential claims. That is, there are issues to be resolved by the jury, and there is no basis to release any of the Insurers from the trial. The Court notes that Excess Insurers Gerling and Westchester and Indemnity contend that Reichhold's potential liability for any relevant period is insufficient to exhaust National Union's Umbrella policies for that period, and that the excess policies are therefore not triggered. However, given the issues remaining for trial, the Court cannot conclude as a matter

17

of law what amount of "property damage" may be established for any given policy year. Therefore, the Phase II Motions for Summary Judgment asserted by the various parties related to triggers of coverage and allocation of coverage will be denied at this time.

Thus, having determined that issues of fact remain for resolution at trial, all of the pending Motions for Summary Judgment will be denied, and any remaining issues will be addressed at the trial of this matter, which will begin on Tuesday, October 13, 2009. The Court notes that various discovery disputes were previously referred to the Magistrate Judge and all of those have been addressed or were denied as moot. Discovery is closed and this case is ready for trial. To the extent any issues remain, those should be presented to the Court as pre-trial Motions in Limine. With respect to other pending motions, the Motion for Oral Argument will be denied, as the Court concludes that no further oral argument is necessary on these issues. In addition, the Court notes that Reichhold has filed a Motion to Realign the Parties, seeking to be designated as the Plaintiff with all of the Insurers designated as Defendants for purposes of trial. The Court finds that this Motion is well-taken and that such a realignment would assist in presentation of evidence and would remove unnecessary confusion given the present alignment of the parties. The Motion to Realign will therefore be granted, and for purposes of trial Reichhold will be designated as the Plaintiff and all of the Insurers will be designated as Defendants. Finally, the Court will deny as moot Reichhold's Motion to Take Judicial Notice, which raised additional contentions with respect to the Recommendation and Motions for Summary Judgment. Any further motions will be considered by the Court in ruling on Motions in Limine prior to trial.

IT IS THEREFORE ORDERED that all of the various Motions for Summary Judgment [Doc. #194, #191, #197, #196, #221, #227, #229, #224, #276] are DENIED and this case is set for trial beginning Tuesday, October 13, 2009.

IT IS FURTHER ORDERED that any previously-filed discovery motions are DENIED without prejudice to any remaining issues being raised as pre-trial Motions in Limine.

IT IS FURTHER ORDERED that Reichhold's Motion to Realign the Parties [Doc. #298] is GRANTED and for purposes of trial, Reichhold will be designated as Plaintiff and all of the Insurers will be designated as Defendants.

IT IS FURTHER ORDERED that Reichhold's Motion for Oral Argument [Doc. #289] and Motion to Take Judicial Notice [Doc. #300] are DENIED as moot.

This, the 30th day of September, 2009.

_____
United States District Judge